UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DOUGLAS LACKEY, a married person,

　　　　　　Plaintiff,

　　　v.

LEWIS COUNTY, a municipal corporation,
and MICHAEL GOLDEN, et. al,

　　　　　　Defendants.

Case No. C09-5145RJB

ORDER ON (1)
DEFENDANT GOLDEN'S
MOTION FOR
SUMMARY JUDGMENT;
(2) DEFENDANT LEWIS
COUNTY'S MOTION
FOR SUMMARY
JUDGMENT; and (3)
DEFENDANT LEWIS
COUNTY INDIVIDUAL
DEFENDANTS' MOTION
TO DISMISS

　　　　This matter comes before the court on Defendant Michael Golden's Motion for Summary Judgment and Lewis County's Motion for Summary Judgment of All Claims Based on the Actions of Michael Golden. Dkt. 37. Together with these motions, the court has considered Defendant Burleson's Notice of Joinder in Defendant Golden's Motion for Summary Judgment re Injunctive Relief Claim, Dkt. 54, and Lewis County Individual Defendants' Motion to Dismiss, Dkt. 41. The court has considered the relevant documents, responses and replies, and the remainder of the file herein.

## PROCEDURAL HISTORY

　　　　On March 16, 2009, defendants Lewis County, Michael Golden, Jane Doe Golden, Steve Mansfield, Jane Doe Mansfield, Ross McDowell, Jane Doe McDowell, Steve Walton, Jane Doe Walton,

Steve Aust, Janet Doe Aust, Pat Smith, Janet Doe Smith, Allen Stull, Jane Doe Stull, Ron Averill, Jane Doe Averill, Richard Graham, Jane Doe Graham, Lee Grose, and Jane Doe Grose (Lewis County defendants) removed this matter from Thurston County Superior Court to this court pursuant to 28 U.S.C. § 1446.  Dkt. 1.  The Notice of Removal stated that the only other named defendant, Mason County Prosecuting Attorney Gary Burleson, did not oppose removal.  Dkt. 1 at 3.  The plaintiff, Douglas Lackey, had filed his complaint in Thurston County Superior Court on February 17, 2009.  Dkt. 1-3.

On June 5, 2009, the court denied Defendant Michael Golden's Motion to Dismiss on the basis that the motion was premature in that relevant discovery on immunity had not been conducted.  Dkt. 31.  Subsequently, the parties filed a Joint Status Report and Discovery Plan to pursue discovery on all matters.  Dkt. 32.  On September 1, 2009, the parties completed phase one of discovery, which allowed depositions solely related to Mr. Golden's claim for absolute and/or qualified immunity.  Dkt. 32 at 4.

On the same day that phase one discovery was completed, Mr. Golden filed this Motion for Summary Judgment, which Lewis County joins for all claims based on the actions of Mr. Golden.  Dkt. 37.  Also on September 1, 2009, the individual Lewis County defendants filed a Motion to Dismiss.  Dkt. 41.  Mr. Burleson then filed a Notice of Joinder in Mr. Golden's Motion for Summary Judgment.  Dkt. 54.

On September 23, 2009, the plaintiff filed a response to Mr. Golden's motion for summary judgment and a response to the individual Lewis County defendants' motion to dismiss.  Dkt. 55; Dkt. 57.  Mr. Golden replied on October 2, 2009.  Dkt. 62.  The Lewis County individual defendants also replied on October 2, 2009.  Dkt. 61.

MOTION FOR SUMMARY JUDGMENT

On September 1, 2009, Mr. Golden filed a motion for summary judgment, contending that (1) as Lewis County's Prosecuting Attorney, he is entitled to absolute immunity regarding the claims under 42 U.S.C. § 1983 for sharing information with another prosecutor about an officer with *Brady* issues; (2) he is entitled to qualified immunity because there was no clearly established law in 2007 holding that a prosecutor is prohibited from transmitting *Brady* information to a fellow state prosecutor in another county; and reasonable prosecuting attorneys would have believed that communication of the *Brady* information was lawful; (3) plaintiff's Due Process claim against him fails because Mr. Golden had no personal involvement in deprivation of plaintiff's property interests and Mr. Golden provided notice to the

plaintiff that he intended to issue the *Brady* letter; (4) plaintiff's claim for breach of contract against him fails because Mr. Golden did not sign the settlement agreement and was not a party to it; plaintiff signed a waiver authorizing release of any and all information about him; and the settlement agreement authorized disclosure of *Brady* information; (5) plaintiff's defamation claim fails to meet the elements of the claim; (6) plaintiff's invasion of privacy claim fails to meet the elements of the claim; (7) plaintiff's false light claim fails to meet the elements of the claim; (8) plaintiff's tortious interference with contractual relations and employment opportunities claim fails to meet the elements of the claim; and (9) plaintiff's claim for injunctive relief against Mr. Golden should be dismissed because of the public interest in granting prosecutors deference to share *Brady* material. Dkt. 37.

In addition to Mr. Golden's contentions, Defendant Lewis County contends that the plaintiff's 42 U.S.C. § 1983 claim against it fails to the extent that it is based on Mr. Golden's alleged actions in that (1) Lewis County cannot be held liable as a municipality without a specific promulgated regulation or a showing of deliberate indifference that led to the violation; (2) Mr. Golden's actions as Lewis County prosecutor represented actions of the state of Washington instead of the county; and (3) there is no authority supporting the plaintiff's claim that he was entitled to a name-clearing hearing before the disclosure of *Brady* material. Dkt. 37. Lewis County further requests summary judgment on each state law claim based on the same failures alleged by Mr. Golden. Dkt. 37.

Mr. Burleson filed a notice of joinder to the section of Mr. Golden's motion for summary judgment regarding the claim for injunctive relief, contending that the plaintiff stated that Mr. Burleson is a party to the action only on that claim, and that summary judgment on the injunctive relief claim should cause Mr. Burleson to be dismissed form this action. Dkt. 54.

In his response, the plaintiff contends that (1) Mr. Golden is not entitled to absolute immunity because disclosing the *Brady* letter to Mr. Burleson was an administrative act rather than one intimately tied to the judicial process; (2) Mr. Golden is not entitled to qualified immunity because he was not actively engaged in the prosecution of a defendant when he shared the *Brady* letter with Mr. Burleson; (3) regardless of whether immunity is granted to Mr. Golden, injunctive relief is still appropriate; and (4) the remaining state claims should survive because there are material issues of fact regarding each claim. Dkt. 55. The plaintiff further contends that, even if summary judgment is granted to Mr. Golden, dismissal of

Lewis County is premature because phase one of discovery focused solely on Mr. Golden's defense of immunity and that facts regarding Lewis County's liability have yet to be developed. Dkt. 55.

## MOTION TO DISMISS

On September 1, 2009, the individual Lewis County defendants, with the exception of Michael Golden, Steve Mansfield, and Ross McDowell, filed a motion to dismiss, contending that the plaintiff failed to provide personal service of the summons and complaint to each defendant as required by Fed. R. Civ. P. 4. All of the individual defendants, with the exception of Steve Mansfield and Steve Walton, also move for dismissal on the grounds that none of the individual defendants had personal involvement with decisions regarding what process was given to the plaintiff upon termination. Dkt. 41. Mr. Burleson is not a party to either section of this motion to dismiss. Dkt. 41.

In his response, the plaintiff concedes that seventeen of the defendants did not receive personal service and should be dismissed. Dkt. 57. The plaintiff's response does not address the motion to dismiss Defendants Golden or McDowell based on lack of personal involvement with decisions regarding what process was given to the plaintiff upon termination. Dkt. 57.

## RELEVANT FACTS

The plaintiff was employed as a Deputy Sheriff with the Lewis County Sheriff's Office, beginning in May 2001. Dkt. 16 at 2.

In May 2007, an internal investigation was conducted by the plaintiff's immediate supervisor, Sgt. Alan Stull, and the Operations Patrol Commander, Steve Aust, based on a formal citizen's complaint lodged against the plaintiff. Dkt. 16 at 3. Included in the factual determinations of the investigative report were findings that the plaintiff had been untruthful. On June 22, 2007, Chief Pat Smith conducted a pre-disciplinary hearing and determined that the plaintiff violated Sheriff's office policies. This caused Lewis County Sheriff Chief of Staff Steve Walton to send the results of the investigation to the Lewis County Prosecutor for analysis under *Brady v. Maryland*, 373 U.S. 83 (1963). Dkt. 16 at 3. *Brady v. Maryland* imposes a duty upon prosecutors to disclose evidence that is favorable to an accused in criminal cases. *Brady*, 373 U.S. at 87. Evidence that could be potentially used for impeachment of a witness is included in the realm of evidence favorable to an accused. *See Giglio v. United States*, 405 U.S. 150, 153 (1972).

On July 3, 2007, Mr. Walton sent a letter to Lewis County Prosecuting Attorney Michael Golden

for a formal review, requesting a determination of the plaintiff's status relative to the *Brady* issue. Dkt. 16 at 3. Mr. Walton also sent a letter to the plaintiff, informing him that Mr. Walton had requested a *Brady* analysis from the Prosecuting Attorney. Dkt. 16 at 3, 12.

On July 6, 2007, Mr. Walton sent another letter advising the plaintiff that he had reviewed the file related to the investigation and the pre-disciplinary hearing conducted by Chief Smith; that he concurred with Chief Smith's findings that the plaintiff's actions violated the Lewis County Sheriff's Office Mission, Oath, Code of Ethics, Ethical Values, and Vision Statement; and that the plaintiff violated twelve enumerated policies of the Sheriff's Office. Dkt. 16 at 14. In addition, the letter stated that the plaintiff violated Lewis County Sheriff Civil Service Rule IX, Section 1, Paragraphs A and B, which state as follows:

A. "Incompetency, inefficiency or inattention to or dereliction of duty."

B. "Dishonesty, intemperance, immoral conduct, insubordination, discourteous treatment of the public or to a fellow employee, or any other act or omission tending to injure the public service; or any other willful failure on the part of the employee to properly conduct himself; or any willful violation of the provisions of the Civil Service Act or these Rules and Regulations."

Dkt. 16 at 15. The letter further stated that, as a result of the plaintiff's actions and the pre-disciplinary findings, Mr. Walton found it appropriate to terminate the plaintiff's employment. Dkt. 16 at 15. In addition, the letter stated that allegations of dishonesty required independent *Brady* analysis by the Prosecuting Attorney, and that a determination of lack of veracity "would constitute an additional and independent basis for termination." Dkt. 16 at 15.

On July 11, 2007, Mr. Golden sent Lewis County Sheriff Mansfield and Mr. Walton a memo, advising them of the impact the disciplinary findings regarding the plaintiff would have on the plaintiff's pending cases and any future referrals, specifically in regard to the requirements of *Brady v. Maryland*. Dkt. 16 at 17. The memo stated as follows:

The disciplinary file you provided contains findings that Deputy Lackey committed job-related acts of dishonesty or untruthfulness in violation of LCSO [Lewis County Sheriff's Office] policy and civil service rule. I am obligated to provide this information to defendants and defense attorneys in every case in which Deputy Lackey is likely to testify as a witness for the State.

Dkt. 16, at 17.

On July 11, 2007, Mr. Walton met with the plaintiff to provide the plaintiff the opportunity to present new information not addressed in the investigation. Dkt. 16 at 5. Mr. Walton stated in his

declaration that the plaintiff failed to present any new information; Mr. Walton concurred with the findings of the investigation and with Chief Smith's recommendation to terminate plaintiff's employment. Dkt. 16 at 5.

On July 13, 2007, Mr. Walton notified the plaintiff by letter of his termination. Dkt. 16 at 5. The plaintiff filed an appeal of his termination through the Sheriff's Office Civil Service Commission. Dkt. 1-5 at 2. During the appeal process, a settlement was reached and a Settlement Agreement was executed on January 22, 2008. Dkt. 16 at 6. As part of the settlement, the Sheriff's Office agreed to remove any reference to findings of dishonesty in the plaintiff's termination letter; however, the findings were to remain in the plaintiff's permanent investigation file. Dkt. 16 at 6. The parties to the agreement– the Lewis County Sheriff's Office, the Lewis County Deputies Guild, and the plaintiff– agreed that only the plaintiff's termination letter and dates of employment would be shared with prospective employers absent a signed waiver from the plaintiff allowing further disclosure. Dkt. 16 at 25-26. The settlement agreement further stated that the *Brady* memo from Mr. Golden to Mr. Walton would remain sealed by the Sheriff unless directed to be disclosed by a court order, public records request, or other applicable and controlling laws. Dkt. 16 at 25.

It is unclear exactly what role Mr. Golden may have played in the settlement negotiations. A representative from the Prosecutor's office did take part in the proceedings, and apparently often left to discuss issues with someone– presumably Mr. Golden. Dkt. 60 at 2. What is clear from the record is that Mr. Golden maintained his stance during the negotiations regarding the determination that the Lewis County investigation's findings into the plaintiff's actions constituted *Brady* material, and that, absent a reversal of those findings, the *Brady* determination would stand. Dkt. 58 at 10-11. The plaintiff concedes this point by citing to and attaching to his response brief the relevant portion of Mr. Golden's deposition. Dkt. 55 at 15; Dkt. 58-1.

After the settlement agreement was executed, the plaintiff applied for employment with the City of Shelton Police Department. Dkt. 1-5 at 4. The plaintiff states that during this process he advised Shelton Police Chief Terry Davenport "of the means by which [his] employment had ended with the Office of the Sheriff for Lewis County." *Id.*

In mid-June 2008, the City of Shelton Police Department hired the plaintiff on a provisional basis

and informed him that he would be made permanent once his background investigation was complete. *Id.* Two detectives from the City of Shelton Police Department visited the Lewis County Sheriff's Office to gain information for this investigation. *Id.* To allow the City of Shelton Police Department to conduct its inquiry, the plaintiff signed a waiver. *Id.* at 16. The plaintiff stated in a declaration that he understood under the terms of the settlement agreement that this waiver would allow the Lewis County Sheriff's Office "to disclose more information than my dates of employment and last held position." *Id.* at 4.

During the City of Shelton background investigation, Lewis County provided some information to the investigators. However, "[Mr. Walton] decided to refrain from providing the contents of the settlement agreement as well as Prosecutor Golden's sealed *Brady* letter [from the plaintiff's personnel file] unless those documents were specifically requested." Dkt. 16 at 7.

In late-June 2008, the plaintiff was informed by Chief Davenport that the inquiry had been completed and that the detectives found some negative information in the plaintiff's employment file but "nothing that would preclude [him] from continuing to work for the City of Shelton and its Police Department." Dkt. 1-5 at 4.

On June 30, 2008, the plaintiff received a letter from Mr. Golden, which indicated that Mr. Golden had learned of the plaintiff's employment with the City of Shelton Police Department and that he would forward the *Brady* letter to the Mason County Prosecutor. Dkt. 1-5 at 5. The letter gave the plaintiff ten days to contact Mr. Golden if he had objections to the letter. Dkt. 15 at 4.

The plaintiff gave to Chief Davenport a copy of the letter from Mr. Golden. Dkt. 1-5 at 5. Chief Davenport contacted Mr. Golden concerning the *Brady* letter in order to gain specific information about the letter. Dkt. 1-7 at 13. Mr. Golden stated in a declaration that Chief Davenport requested that he delay issuing the letter until Chief Davenport could further investigate the issue. Dkt. 15 at 4.

Shortly after, Chief Davenport contacted Defendant Mason County Prosecutor Gary Burleson, informing him that Mr. Golden intended to issue a *Brady* letter concerning the plaintiff to Mr. Burleson. Dkt. 1-7 at 13. Mr. Burleson informed Chief Davenport that a *Brady* letter would have to be disclosed to defendants in any case where the plaintiff could be called as a witness. Dkt. 1-6 at 8.

After the plaintiff told Chief Davenport about Mr. Golden's *Brady* letter, Chief Davenport sent two officers back to the Lewis County Sheriff's Office to review the plaintiff's personnel file again and speak

with Mr. Golden. Dkt. 1-6 at 7. While it is disputed whether there was new information in the plaintiff's file during this second visit or if the two officers had failed to notice the information during their first review, it is agreed that after the second review the officers reported to Chief Davenport that there was information calling into question the plaintiff's honesty and credibility. Dkt. 1-6 at 7-9. It also appears undisputed that the two detectives already had a copy of the plaintiff's settlement agreement and Mr. Golden's *Brady* letter, and that Mr. Walton never disclosed either document to the detectives. Dkt. 16 at 7-8.

At this stage of the development of the record, it appears that the Lewis County Sheriff's Office never actually disclosed Mr. Golden's *Brady* letter or the terms of the settlement agreement to anyone; the plaintiff has not made a contrary showing.

On July 10, 2008, Mr. Golden sent a letter to Mr. Burleson informing him of the *Brady* determination made in regard to the Lewis County investigation of the plaintiff, and included a copy of Mr. Golden's memo to Sheriff Mansfield detailing his legal obligations under *Brady v. Maryland*. Dkt. 15 at 4-5.

The plaintiff was then informed by Chief Davenport that the plaintiff could no longer be employed by the City of Shelton Police Department and he was terminated. Dkt. 1-5 at 6.

The above stated facts appear to be undisputed (with the exception of whether information indicating dishonest behavior was in the plaintiff's file when first reviewed by the Mason County detectives, but that issue of fact is immaterial to this summary judgment motion). The predominant disputed fact is whether or not the plaintiff's actions while employed by the Lewis County Sheriff's Office constituted an act of dishonesty which caused the initial *Brady* determination. That issue is immaterial to this motion. The Lewis County investigation and findings of dishonesty are not properly challenged here; that appeal was handled during the Civil Service Commission process and settlement agreement.

## DISCUSSION

### I. Motion for Summary Judgment Analysis

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed. R. Civ. P. 56(e).

### A.  Absolute Immunity

Prosecutors have absolute immunity from damage actions for conduct that is intimately associated with the judicial phase of the criminal process.  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  This immunity addresses the concern that "the public trust of the prosecutor's office would suffer were the prosecutor to have in mind his own potential damages liability when making prosecutorial decisions–as he might well were he subject to § 1983 liability." *Van de Kamp v. Goldstein*, 129 S.Ct. 855, 860 (2009), quoting *Imbler*, 424 U.S. at 424 (internal citations omitted).

In a recent ruling, the Supreme Court held that a district attorney and chief deputy district attorney were entitled to absolute immunity for Due Process violation claims under 42 U.S.C. § 1983.  *Van de Kamp v. Goldstein*, 129 S.Ct. 855 (2009).  In that case, the plaintiff, a prisoner whose conviction was overturned in a habeas corpus proceeding, had alleged that the defendants' failure to institute a system of information sharing among deputy district attorneys regarding jailhouse informants, and their failure to adequately train or supervise sharing of information concerning informants, resulted in a § 1983 Due Process violation.  *Van de Kamp*, 129 S.Ct. at 859 (2009).

In applying absolute immunity to the district attorneys' actions, the Supreme Court discussed the policy considerations underlying the *Imbler* court's reasoning in allowing absolute prosecutorial immunity.

> Those considerations, the [*Imbler*] Court said, arise out of the general common-law "concern that harassment by unfounded litigation" could both "cause a deflection of the prosecutor's energies from his public duties" and also lead the prosecutor to "shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.*, at 423, 96 S.Ct. 984. [citing *Imbler v. Pachtman*, 424 U.S. 409, (1976)].
> ...
> A "prosecutor," the Court noted, "inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds

of indictments and trials." *Id.*, at 425-426, 96 S.Ct. 984. The Court thus rejected the idea of applying the less-than-absolute "qualified immunity" that the law accords to other "executive or administrative officials," noting that the "honest prosecutor would face greater difficulty" than would those officials "in meeting the standards of qualified immunity." *Id.*, at 425, 96 S.Ct. 984.

*Van de Kamp*, 129 S.Ct. at 860.

Ever since *Imbler*, the question of whether absolute immunity may apply has turned on the nature of the prosecutorial action; when a prosecutor is not acting as an officer of the court, but is instead engaged in investigative or administrative tasks, the immunity does not apply. *Van de Kamp,* 129 S.Ct. at 861, citing *Imbler v. Pachtman*, 424 U.S. at 431, n. 33. Therefore, to determine if prosecutorial immunity applies, the court must look to the nature of the function the prosecutor performed, not his or her title. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). The official seeking prosecutorial immunity bears the burden of showing that such immunity is justified. *Id.* at 269.

Mr. Golden argues that he is entitled to absolute prosecutorial immunity for sending the *Brady* letter to Mr. Burleson, the Mason County Prosecuting Attorney. Mr. Golden argues that (1) Mr. Golden had knowledge of the findings of untruthfulness against the plaintiff and as an agent of the State he had a duty to share that knowledge with a fellow prosecutor; (2) Mr. Golden and Mr. Burleson had a responsibility to make decisions about whether to prosecute criminal cases with the understanding that the findings against the plaintiff were potentially *Brady* material; and (3) the public policy implicated by allowing prosecutors to share *Brady* information demands absolute immunity. Dkt. 37 at 7-9.

The plaintiff contends that absolute immunity is inappropriate because Mr. Golden's actions could only be considered administrative in nature, and were not connected to a prosecutorial decision in any specific case. Dkt. 55 at 13. The plaintiff argues that absolute immunity must be narrowly applied to prosecutorial functions that are intimately tried to the judicial process as determined by common law and interpreted by the Supreme Court. *Id*.

Mr. Golden attempts to extend the holding of *Van de Kamp v. Goldstein* to cover the sharing of *Brady* material from one county prosecutor to another. The facts of the two cases are distinguishable. Unlike in *Van de Kamp*, the alleged Due Process violation here is not directly connected to the conduct of a trial because Mr. Golden was sharing information that might be used by Mr. Burleson in future charging decisions. Additionally, in *Van de Kamp*, the alleged Due Process violations were traceable to prosecutions that were within the jurisdiction of the prosecuting attorney and deputy prosecuting attorney,

which is not the case here.

Mr. Golden also relies on *Botello v. Gammick*, 413 F.3d 971 (9th Cir. 2005). In that case, the Ninth Circuit applied absolute prosecutorial immunity to retaliation claims under 42 U.S.C. § 1983, based upon the prosecutor's decision not to prosecute cases in which the plaintiff police officer participated in any phase of the investigation. *Botello* is also factually distinguishable from the case before this court. Like *Van de Kamp*, the alleged actions in *Botello* occurred within the defendant prosecutor's charging jurisdiction. This case did not involve Mr. Golden's charging decisions within his jurisdiction; he sent the *Brady* letter to a prosecutor in another county.

Nonetheless, Mr. Golden's reliance on both *Van de Kamp* and *Botello* has some merit. The holding in *Botello* indicates that prosecutors are absolutely immune for deciding not to prosecute cases where a particular officer is involved and for communicating that decision to others. 413 F.3d at 977. Furthermore, the underlying concern with information sharing addressed by the Court in *Van de Kamp*, as well as the public policy interest in the sharing of *Brady* material, indicate that absolute immunity could be extended to Mr. Golden. In his response brief, the plaintiff fails to address the holding of *Van de Kamp* entirely, whereas Mr. Golden has substantially based his claim of absolute immunity on that case.

Neither party cites to authority, positive or otherwise, discussing the responsibility or authority of a prosecutor to share *Brady* material outside of his or her own jurisdiction, especially outside of the context of a specific criminal case. Whether this is a matter of first impression or not, the court is hesitant to expand the doctrine of absolute immunity to cover this specific situation.

At the same time, allowing a prosecutor to be immune for maliciously withholding potentially exculpatory or impeaching information and allowing that same prosecutor to be held liable for choosing to disclose the same information seems illogical. The primary difference, as argued by the plaintiff, is that in the former instance there is a specific case with a specific defendant, and in the latter there is not. The line between a prosecutor's actions being intimately tied to the judicial process and being administrative must be drawn somewhere, and the plaintiff contends that it should be at the point where a prosecutor no longer takes action regarding a specific criminal case.

A finding of absolute immunity causes significant impact on a lawsuit, as "sometimes such immunity deprives a plaintiff of compensation that he undoubtedly merits." *Van de Kamp*, 129 S.Ct. at

864. Nonetheless, imposing liability for actions that involve prosecutorial discretion during the performance of official duties can impede the efficient functioning of the prosecutorial office and deflect the prosecutor's attention away from performance of those duties. Mr. Golden acted in his official capacity, as an elected prosecutor and representative of the State, in alerting Mr. Burleson to the potential for *Brady* material in future criminal cases. This activity may very well be entitled to absolute immunity, particularly in light of the Supreme Court's holding in *Van de Kamp v. Goldstein*. Ultimately, because Mr. Golden is clearly entitled to qualified immunity for his actions, the court finds it unnecessary to reach the question of absolute immunity.

## B. Qualified Immunity

Defendants in a § 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Harlow*, 457 U.S. at 815. The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819. Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993).

In analyzing a qualified immunity defense, the court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. While the *Saucier* decision set forth a required sequence of analysis that is often appropriate, that sequence should no longer be regarded as mandatory. *Pearson v. Callahan*, 129 S.Ct at 811. "The judges of ... the courts of appeals should be permitted to exercise their sound

discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Saucier v. Katz*, 533 U.S. at 200-01.

Mr. Golden contends that, as an alternative to absolute immunity, he is entitled to qualified immunity for sending the *Brady* letter because (1) there was no clearly established law in 2007 holding that a prosecutor could not transmit *Brady* information to a prosecutor in another county; and (2) reasonable prosecuting attorneys would have believed that communication of the *Brady* information was lawful. Dkt. 37 at 9-10.

The plaintiff concedes that there is no law prohibiting a prosecutor from sharing *Brady* information with a prosecutor from another county. Instead, the plaintiff argues that qualified immunity is improper when a prosecutor disseminates *Brady* information when he or she is not actively engaged in the prosecution of a defendant. Dkt. 55 at 14. The plaintiff further argues that Mr. Golden in effect recognized a due process right of the plaintiff by allowing the plaintiff ten days to respond before sending the *Brady* letter to Mr. Burleson. *Id.*

The question of whether to apply qualified immunity to Mr. Golden's actions hinges on the second prong of the *Saucier* analysis, namely whether the law clearly recognized a right for the plaintiff to not have *Brady* information shared outside of Lewis County. To make that determination, it is important to restate exactly what Mr. Golden's actions were. From the record that has been developed, Mr. Golden's actions can be summarized as follows:

(1) On July 11, 2007, Mr. Golden sent Lewis County Sheriff Mansfield and Mr. Walton the initial *Brady* memo, stating that he was obligated to provide the office's findings of dishonesty to defendants in each case where the plaintiff is likely to testify.

(2) During the plaintiff's termination settlement negotiations with Lewis County, Mr. Golden consistently maintained that the Lewis County investigation's findings into the plaintiff's actions constituted *Brady* material, and that absent a reversal of those findings the *Brady* determination would stand.

(3) On June 30, 2008, Mr. Golden sent a letter to the plaintiff indicating that Mr. Golden would be forwarding his *Brady* memo to the Mason County Prosecutor and giving the plaintiff ten days to contact Mr. Golden with objections.

(4) When contacted by Shelton Police Chief Davenport, Mr. Golden again refused to vacate the

*Brady* determination or delay sending such to Mr. Burleson absent a reversal of the Lewis County internal investigation findings.

(5) On July 10, 2008, Mr. Golden sent a letter to Mr. Burleson informing him of the *Brady* determination and included a copy of Mr. Golden's memo to Sheriff Mansfield of July 11, 2007.

These are the actions that form the basis for the plaintiff's claim for relief and for Mr. Golden's claim of immunity.

The plaintiff has failed to identify any law that recognizes a police officer's right to a name-clearing hearing after a *Brady* determination has been made, or any law prohibiting a prosecutor from transmitting a *Brady* determination to another jurisdiction. Instead, the plaintiff attempts to attack the underlying finding of dishonesty, and alternatively claims that the settlement agreement between himself and the Lewis County Sheriff's Office precluded release of the *Brady* memo.

On the first argument, the findings of the Lewis County internal investigation are not under consideration here and are immaterial to determination of this motion. The plaintiff dispensed with the appeal process of that investigation by negotiating a termination settlement with the Sheriff's Office.

On the second argument, the plaintiff's own pleadings illustrate that Mr. Golden's actions were consistent throughout. During the settlement negotiations, Mr. Golden maintained his position that the findings of the investigation demanded *Brady* disclosure to any defendant in a case where the plaintiff could testify, and he refused to remove the *Brady* letter unless the findings were vacated. The terms of the settlement agreement made it clear that the plaintiff's *Brady* letter would remain in the Sheriff's investigative file, and Mr. Golden's statements made it clear that he would not remove the letter himself. Even if the plaintiff had made a showing that Mr. Golden, as the Lewis County Prosecutor, was bound to the settlement agreement, the plaintiff could hardly be surprised to have this information surface. This is especially true after the plaintiff executed a waiver with the Shelton Police Department.

The court can find no law prohibiting a prosecutor from sharing potentially exculpatory or impeaching evidence with prosecutors of another jurisdiction. Such a law would be antithetical to a prosecutor's duty of disclosure mandated by *Brady v. Maryland*. A reasonable prosecutor in Mr. Golden's position could feel obliged to offer such information to a fellow prosecutor to remain in compliance with *Brady* and its progeny; and a reasonable prosecutor in Mr. Golden's position would not have known that his conduct in releasing the *Brady* letter would violate any clearly established constitutional right.

Accordingly, Mr. Golden's claim of qualified immunity regarding the plaintiff's § 1983 claim should be granted.

### C. State Claims Against Mr. Golden

1. Breach of Contract

Mr. Golden contends that he is not liable for breach of contract because he was not a party to the settlement agreement, because the plaintiff executed a waiver allowing release of all information about him, and because the settlement agreement allowed disclosure of the *Brady* letter when required under controlling and applicable law. Dkt. 37 at 13. The plaintiff has failed to provide any facts to dispute these claims other than attacking the credibility of the underlying *Brady* determination; most importantly, the plaintiff has failed to show that the settlement agreement was binding on Mr. Golden. Accordingly, the claim for breach of contract against Mr. Golden should be dismissed.

2. Defamation

Mr. Golden contends that he is not liable for defamation because the plaintiff fails to show the following elements: falsity; that the communication between Mr. Golden and Mr. Burleson was a publication; that the communication between Mr. Golden and Mr. Burleson was unprivileged; malice; and any damages as a result of Mr. Golden's statement. Dkt. 37 at 14-16.

Even assuming that Mr. Golden's communication was false and malicious, this claim should be dismissed because the plaintiff has failed to prove that the communication between Mr. Golden and Mr. Burleson was not privileged. *See Pate v. Tyee Motor Inn, Inc.*, 77 Wn.2d 819, 820-21 (1970) ("A privileged communication involves the occasion where an otherwise slanderous statement is shared with a third person who has a common interest in the subject and is reasonably entitled to know the information."). Whether a qualified privilege applies is a matter of law for courts to determine. *Moe v. Wise*, 97 Wn. App. 950, 957 (1999). Although most situations in which the common interest privilege applies involve persons from the same organization or enterprise, the speaker and the third party need not be allies; rather, the speaker and the third party must both have an interest in the subject matter of the defamatory statement. *Id.* at 959.

A qualified privilege by definition is not absolute. Whether the speaker has abused a qualified privilege such that the privilege is lost is ordinarily a question of fact for a jury unless the facts support only

one reasonable conclusion. *Id.* at 962. Defamation plaintiffs can demonstrate that a qualified privilege has been abused in one of five ways: (1) the speaker knew the statement to be false or acted in reckless disregard as to its falsity, (2) the speaker did not make the statement for the purpose of protecting the common interest, (3) the speaker knowingly published the matter to a person who is not covered by the privilege, or (4) the speaker did not reasonably believe the subject matter was necessary to serve the common interest, or (5) the speaker published both privileged and unprivileged statements. *Id.* at 963. Evidence of abuse of the privilege must be clear and convincing. *Id.*

In this case, Mr. Golden and Mr. Burleson were both equally interested in the subject matter of the communication. Both men were required to exercise due diligence to disclose potentially exculpatory or impeaching evidence to any criminal defendant in the execution of their offices. Furthermore, the plaintiff has failed to prove that Mr. Golden's communication with Mr. Burleson was false or that Mr. Golden acted with any malice toward the plaintiff. Mr. Golden's deposition makes it clear that his decision to retain the *Brady* letter on file and to transmit it to Mr. Burleson was based on his interpretation of a prosecutor's duty under *Brady*. The plaintiff has failed to prove any abuse of a qualified privilege.

Additionally, the plaintiff has failed to offer proof of damages stemming from Mr. Golden's communication. By the plaintiff's own admission, he was the first person to inform Chief Davenport about Mr. Golden's *Brady* letter, and Chief Davenport was the first person to contact Mr. Burleson. While the plaintiff's actions may have been in reaction to Mr. Golden's letter to him, it cannot be shown that the plaintiff's own action was not the cause of termination rather than Mr. Golden's communication with Mr. Burleson. Accordingly, the claim for defamation against Mr. Golden should be dismissed.

3. Invasion of Privacy/False Light

Mr. Golden contends that he is not liable for invasion of privacy or false light because the plaintiff has failed to show the following elements: that Mr. Golden's communication with Mr. Burleson was publicized; that the communication concerned the plaintiff's private life; that the information would not be a legitimate concern of the public; and that the plaintiff's waiver did not allow the communication. Dkt. 37 at 17-19. The plaintiff fails to respond to these arguments. Accordingly, the claim for invasion of privacy and false light against Mr. Golden should be dismissed.

4. Tortious Interference with Contractual Relations

1    Mr. Golden contends that he is not liable for tortious interference with contractual relations and

2    with employment opportunities because the plaintiff has failed to show the following elements: that Mr.

3    Golden was an intermeddling third party rather than an agent of the state; that Mr. Golden intentionally

4    interfered with the plaintiff's employment relationship with the Shelton Police Department; that Mr.

5    Golden had an improper purpose or used improper means; and that Mr. Golden's communication caused

6    damages.  Dkt. 37 at 20.

7    The plaintiff argues only the fact that his termination from the Shelton Police Department was a

8    result of Mr. Golden's actions.  However, the plaintiff fails to show that Mr. Golden intentionally interfered

9    with the plaintiff's employment, or that it was done improperly.  Instead, Mr. Golden appears to have acted

10   conscientiously out of a sense of prosecutorial duty.  Mr. Golden's intentions were to provide Mr.

11   Burleson with potentially impeaching information that would need to be disclosed to potential criminal

12   defendants; his intentions were not to have the plaintiff fired.  Accordingly, the claim for tortious

13   interference with contractual relations and with employment opportunities against Mr. Golden should be

14   dismissed.

15   **D.  Claims under 42 U.S.C. § 1983 for Declaratory and Injunctive Relief**

16   Mr. Golden argues that injunctive relief is improper because the decision to disclose information

17   that a prosecutor has deemed to be *Brady* material is a traditional prosecutorial function and one that is in

18   the public's best interest of promoting fair and impartial judicial proceedings.  The plaintiff responds by

19   arguing that Mr. Golden did not have any duty under *Brady v. Maryland* to share information about the

20   plaintiff with another agency, and in fact by doing so the defendant caused the plaintiff to suffer injury.

21   The plaintiff accurately states that a finding of qualified immunity for an official does not bar

22   declaratory or injunctive relief.  *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th

23   Cir. 1993).  Therefore, even if Mr. Golden is immune from damages by way of qualified immunity, he still

24   may be subject to injunction if the plaintiff makes an adequate showing for relief.

25   When considering injunctive relief for a § 1983 civil rights claim, the Supreme Court has stated that

26   "even where the prayer for injunctive relief does not seek to enjoin the state criminal proceedings

27   themselves, we have held that the principles of equity nonetheless militate heavily against the grant of an

28   injunction except in the most extraordinary circumstances."  *Rizzo v. Goode*, 423 U.S. 362, 379 (1976).  In

light of that standard, a district court's injunction of a state agency must show "an intentional and pervasive pattern of misconduct in order to enjoin a state agency." *Thomas v. County of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992).

It appears from the record that the plaintiff has suffered actual injury from Mr. Golden's actions. The plaintiff was terminated as a Shelton Police Officer as a direct result of Mr. Golden's *Brady* letter to Mr. Burleson. Likewise, it is clear from the record that Mr. Golden stands firm in his belief that the findings of the Lewis County Sheriff's internal investigation constitute *Brady* material, and that he feels obligated to share that information with any prosecutor in a position to prosecute cases where the plaintiff may be called to testify. Therefore, absent some court-ordered equitable relief, the plaintiff may continue to suffer injury related to employment in law enforcement.

However, while injury to the plaintiff may be necessary to grant injunctive relief, it is not necessarily dispositive. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Rather, the injury to the plaintiff must be weighed against the broader policy implications; here the court is concerned with restricting a prosecutor's discretion regarding disclosure of potentially exculpatory or impeaching information as well as the public's interest in upholding fairness in judicial proceedings.

Based upon the facts developed in this record, there is no evidence that Mr. Golden acted out of anything but a sense of duty to honor the mandate of *Brady v. Maryland*. There is no evidence that Mr. Golden acted out of spite or malice toward the plaintiff, nor intimation that he may do so in the future. Prosecutors are entrusted with the authority and responsibility to protect public safety and uphold the integrity of the judicial system. They perform the latter, in part, by ensuring that criminal defendants are offered all potentially exculpatory or impeaching information. Absent a showing of extraordinary circumstances that would call a prosecutor's true motives into question, the court generally will not intervene in the performance of that duty, especially when the prosecutor has taken the stance of more disclosure rather than less. *See Rizzo*, 423 U.S. at 370-80. Accordingly, the plaintiff's request for declaratory and injunctive relief should be denied.

### E. Defendant Burleson's Joinder to Motion for Summary Judgment

Mr. Burleson seeks joinder to the portion of Mr. Golden's Motion for Summary Judgment which seeks dismissal of the claim for injunctive relief. Mr. Burleson, as the Mason County Prosecutor, moves

for dismissal from this action on the basis that the plaintiff's sole claim against Mr. Burleson is based on this injunctive relief claim. The plaintiff did not respond to Mr. Burleson's joinder to Mr. Golden's motion or to his motion for dismissal.

The plaintiff stated in the Joint Status Report that Mr. Burleson was a party to the action solely for the purpose of the claim for injunctive relief. Dkt. 32 at 2. Because the claim for injunctive relief has been denied, as discussed above, Mr. Burleson should be dismissed from this action.

**F. Lewis County's Motion for Summary Judgment Based on Actions of Mr. Golden**

Lewis County moves for summary judgment, arguing that the plaintiff's claims against the county fail to the extent that they are based on the actions of Mr. Golden. Dkt. 37 at 21. Specifically, Lewis County contends that, as a municipality, it cannot be liable for a claim that Mr. Golden violated the plaintiff's due process rights. Further, Lewis County contends that it cannot be liable for the plaintiff's state law claims because the plaintiff fails to establish a prima facie case, a former employer disclosing information about an employee by request is assumed to act in good faith under Wash. Rev. Code § 4.24.730(1), and the plaintiff signed a waiver allowing Mr. Golden to communicate with Mason County officials. *Id*.

The plaintiff responds by arguing that dismissal of Lewis County is premature because phase one of discovery only concerned the question of immunity with regards to Mr. Golden and the factual record has not been developed regarding the actions of other county employees. Dkt. 55 at 23.

Lewis County has moved for summary judgment to the extent that plaintiff's claims are based on the actions of Mr. Golden. Further discovery is unwarranted for purposes of this motion, because Lewis County has limited its motion to liability stemming from Mr. Golden's actions. Because Mr. Golden acted with qualified immunity in transmitting the *Brady* letter to Mr. Burleson and is entitled to summary judgment, summary judgment is proper with respect to Lewis County as well, as to Lewis County's liability based upon Mr. Golden's conduct.

*II. Motion to Dismiss Analysis*

The individual Lewis County defendants move for dismissal based on two grounds. First, seventeen of the defendants claim that the plaintiff failed to serve a copy of the complaint and summons

upon them personally; second, eighteen of the defendants claim that they had no involvement in the decision of what process to provide the plaintiff during his employment termination. Dkt. 41.

### A. Failure of Service

A plaintiff must serve a summons and a copy of the complaint to each defendant within 120 days of filing the complaint. If service is not made within that time, the court must dismiss the action against that defendant without prejudice unless the plaintiff can show good cause for the failure. Fed. R. Civ. P. 4(m). The plaintiff's complaint was filed in Thurston County Superior Court on February 23, 2009. Dkt. 1-3. This action was then removed to federal court by the defendants on March 16, 2009. Dkt. 1. On September 23, 2009, the plaintiff conceded that the individual plaintiffs that were not served should be dismissed. Dkt. 57. Accordingly, defendants Jane Doe Golden, Jane Doe Mansfield, Jane Doe McDowell, Steve and Jane Doe Walton, Steve and Jane Doe Aust, Pat and Jane Doe Smith, Allen and Jane Doe Stull, Ron and Jane Doe Averill, Richard and Jane Doe Graham, and Lee and Jane Doe Grose should each be dismissed.

### B. Lack of Personal Involvement in Due Process Decisions

The defendants also move for dismissal of the plaintiff's property interest Due Process claim on the grounds that each defendant had no personal involvement with decisions regarding what process was due to the plaintiff at the time of his termination. Dkt. 41. Of these eighteen defendants, sixteen are included in the above named defendants who did not receive personal service; the seventeenth defendant for this motion is Ross McDowell and the eighteenth defendant for this motion is Michael Golden.

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Dismissal of a complaint may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*internal citations omitted*).

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(*citing Twombly*, 550 U.S. at 570). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In sum, for a complaint to survive a motion to dismiss the non-conclusory factual content, and reasonable inferences from that content must be plausibly suggestive of a claim entitling the pleader to relief." *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009).

If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff should be afforded the opportunity to amend the complaint before dismissal. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). If the claim is not based on a proper legal theory, the claim should be dismissed. *Id.* "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Service,* 572 F.3d 962, 972 (9th Cir. 2009).

As a threshold matter, it is unclear to the court which specific claims the defendants seek dismissal of with the statement the "plaintiff's property interest Due Process claim." Dkt. 41 at 5. Furthermore, it is unclear if the defendants are referring to the plaintiff's termination from employment as a Lewis County sheriff or as a Shelton police officer.

To compound matters, the plaintiff has failed to address this portion of the defendants' motion altogether. In accordance with Local Rule 7(b)(2), "[i]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Therefore, to the extent that the plaintiff has stated a claim for a property interest arising from a violation of due process during his termination from the Shelton Police Department, the plaintiff has failed to put forth any facts that would indicate that Defendants Golden or McDowell had any personal involvement beyond Mr. Golden sending the *Brady* letter to Mr. Burleson. It appears that neither defendant had any involvement in the decision-making process regarding the plaintiff's termination from the Shelton police force, and any claim alleging otherwise should be dismissed.

Additionally, to the extent that the plaintiff has stated a claim for a property interest arising from a violation of due process during his termination from the Lewis County Sheriff's Office, the plaintiff has likewise failed to put forth any facts that show that Defendants Golden or McDowell were involved in the

actual termination process.  In fact, by the plaintiff's own admission, the negotiation of the plaintiff's termination agreement with Lewis County was handled by the Sheriff's office and not Mr. Golden, and it appears that Mr. Golden's position regarding the *Brady* letter remained constant throughout the process. Dkt. 55 at 15.  Therefore, the plaintiff has failed to show any personal involvement by Mr. Golden on determining what process was due during the termination process in Lewis County, and has failed to put forth any facts regarding the involvement of Mr. McDowell, and any claim alleging otherwise should be dismissed.

### III.  Remaining Claims

Under 28 U.S.C. § 1367, a federal court may assume supplemental jurisdiction over all other claims that are so related to claims in the action within the original jurisdiction so that they form part of the same case or controversy.  The Court may decline to exercise this supplemental jurisdiction if (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c).

In this case, all of the federal claims have been dismissed.  The remaining claims raise only issues of state law (claims of breach of contract, defamation, invasion of privacy/false light, intentional interference with contractual relations and with employment opportunities, and wage and hour law violations).  There do not appear to be exceptional circumstances warranting this court to assume supplemental jurisdiction over the state law claims.  Accordingly, the parties should be invited to show cause, if any they have, why this court should not decline to exercise supplemental jurisdiction over the state law claims in this case.

Therefore, it is hereby

**ORDERED** that:

(1) Lewis County Prosecuting Attorney Michael Golden's Motion for Summary Judgment (Dkt. 37) is **GRANTED**, and the plaintiff's claim for injunctive relief against Mr. Golden is **DENIED**, and all claims against Mr. Golden are **DISMISSED** with prejudice;

(2) Lewis County's Motion for Summary Judgment of All Claims Based on the Actions of Michael Golden (Dkt. 37) is **GRANTED**, and all claims against Lewis County based on the actions of Michael Golden are **DISMISSED** with prejudice;

(3) Mason County Prosecuting Attorney Gary Burleson's Motion for Summary Judgment re Injunctive Relief Claim (Dkt. 54) is **GRANTED**. The plaintiff's claim for injunctive relief against Mr. Burleson is **DENIED**, and all claims against Mr. Burleson are **DISMISSED** with prejudice;

(4) Lewis County Individual Defendants' Motion to Dismiss (Dkt. 41) is **GRANTED**. All individual defendants with the exception of Steve Mansfield are **DISMISSED** with prejudice.

The surviving claims are all state law claims against Lewis County and Steve Mansfield. The parties may show cause, if any they have, in writing by October 23, 2009, why the state claims of breach of contract, defamation, invasion of privacy/false light, intentional interference with contractual relations and with employment opportunities, and wage and hour law violations against Defendants Lewis County and Steve Mansfield should not be remanded to Thurston County Superior Court. Failure to respond by that date, or to otherwise show cause, will result in remand of the remaining claims.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 9th day of October, 2009.

Robert J. Bryan
United States District Judge